Greco, P.J.
On this appeal, the plaintiff argues that the trial judge erred in denying his motion to amend the complaint for a second time and in allowing the defendanf s motion for summary judgment. In his first amended complaint, the plaintiff alleged that he hired the corporate defendant and defendant Woodrow W. Potter, Jr., individually, to prepare his personal and business tax returns for the 1999 and 2000 tax years, and that the defendant[2] revealed the contents of those tax records in violation of G.L.C. 112, §87E and in violation of its fiduciary duty to the plaintiff. The plaintiff sought damages for emotional distress and financial losses. In his motion to amend his complaint for a second time, the plaintiff sought to substitute G.Lc. 62C, §74 for G.L.C. 112, §87E, and to add a count for negligent infliction of emotional distress. In ordering summary *27 judgment for the defendant, the trial judge ruled that §87E did not apply since the defendant was not a certified public accountant; that, as a matter of law, no fiduciary relationship exists ‘between a tax preparer and his client;” that even if such a duty did exist, “the plaintiff had not pled and could not prove that the defendant violated that duty to gain a personal and meaningful benefit to himself;” that the undisputed facts failed “to demonstrate compensable damages;” and finally, that the undisputed facts precluded any liability under the doctrine of respondent superior.
“The defendant!] bore the burden, as the moving partly], of affirmatively demonstrating the absence of a material issue of fact by either submitting evidence that ‘negate [d] an essential element of [the plaintiffs] claim,’ Kourouvacilis v. General Motor Corp., 410 Mass. 706, 715 (1991), or showing that proof of that claim is ‘unlikely to be forthcoming at trial.’” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “Once the defendant!] established the absence of a triable issue, [the plaintiff] was obligated to respond by alleging specific facts demonstrating that a genuine issue of fact remained for trial (citation omitted). Vague or general allegations of expected proof are insufficient to defeat summary judgment.” Clarke v. Mal Elfman’s Furniture Store, 2005 Mass. App. Div. 160, 161. “It is well established that, on appeal, we may consider any ground apparent on the record that supports the result reached in the [trial] court.” Gabbidon v. King, 414 Mass. 685, 686 (1993). See also United Health v. Commerce Ins. Co., 2005 Mass App. Div. 115, 116.
At the hearing on the motion for summary judgment, the trial judge had before him the complaint, the defendanf s answer, and transcripts of various depositions. Neither party filed an affidavit. The deposed witnesses were the plaintiff, the individual defendant, two of his employees, the plaintiff’s ex-wife, her father, and the attorney who represented the ex-wife in the divorce proceeding. Taken in the light most favorable to the plaintiff, these materials show that the plaintiff and his wife were divorcing, and that during those proceedings the plaintiffs wife obtained copies of the tax returns separately filed by the plaintiff for the 1999 and 2000 tax years. It is undisputed that the wife and her attorney would probably have gained access to the tax returns during the course of the divorce proceedings. Moreover, nothing in the summary judgment materials indicated what information was contained in the tax returns. There was also nothing presented to the trial judge indicating that the plaintiff had suffered any financial loss, or that he had consulted with a health professional specifically for the emotional distress he allegedly suffered (although he consulted with a “holistic healer” to alleviate his stress and for nutritional advice). The distress allegedly suffered manifested itself in “sleepless nights” and a loss of appetite, as more fully described in the discussion below.[3] There was a factual dispute, however, concerning how the tax returns came into the hands of the plaintiff’s ex-wife and her attorney. Did the ex-wife obtain them from the defendant’s office by trickery and deceit, did she find them in the plaintiff’s former bedroom in his mother’s house, or did the defendant give them to the ex-wife’s father with whom he was friendly?
*28 Because it would not affect the outcome of the case, we have elected to review whether a cause of action would lie here under either of the statutes relied upon by the plaintiff; and, therefore, we do not address whether the trial court erred in denying the plaintiffs motion to amend the complaint. Similarly, since the plaintiff sought damages for emotional distress, the analysis below would be the same if there was a separate count for negligent infliction of emotional distress.
1. Count I of the plaintiff’s complaint, as originally filed and in the amended complaint, sought damages for “Breach of Confidentiality.” In moving to amend his complaint, the plaintiff recognized that G.L.C. 112, §87E does not apply since it prohibits a certified public accountant (“CPA”) from disclosing information communicated to him from a client in connection with the accounting services rendered, and it is undisputed that the defendant is not a CPA On the other hand, the defendant did prepare the plaintiffs tax return, and under G.L.c. 62C, §74, it is a criminal offense punishable by a fine and/or incarceration for any person “engaged in the business of preparing tax returns ... [t]o disclose any information obtained in the conduct of such business” without the taxpayef s consent.[4] While noting that it has the power “to supplement legislation in appropriate cases,” the Supreme Judicial Court has “generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference.” Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 544-545 (1998). Rather, a violation of the statute may be considered only as ‘“some evidence’ of [a] defendant’s negligence as to all consequences the statute was intended to prevent.” Bennett v. Eagle Brook Country Store, Inc., 408 Mass. 355, 359 (1990), quoting Adamian v. Three Sons, Inc., 353 Mass. 498, 499 (1968). Thus, in this case, any violation of §74 may be considered as to whether summary judgment on the plaintiff’s count for negligent infliction of emotional distress was appropriate.
2. Count II of the complaint sought damages for “Breach of Fiduciary Duty.” While the relationship of the parties here may have some bearing on the conduct alleged to give rise to the emotional distress claim, there could be no independent claim for a breach of fiduciary duty. A fiduciary “is a person having a duty, created by his undertaking, to act primarily for the benefit of another in a matter connected with his undertaking.” Patsos v. First Albany Corp., 48 Mass. App. Ct. 266, 272 (1999), quoting Restatement (Second) OF AGENCY §13 comment a (1958). A crucial factor in determining whether a fiduciary relationship exists is whether one person is relying on the alleged fiduciary to malee important decisions for him as opposed to merely carrying out his instructions. Aso important is the relative sophistication of the parties, and the “social or personal ties” between them. Patsos v. First Albany Corp., 433 Mass. 323, 335 (2001) (discussing the relationship of a stockbroker with his customer). As stated in Fleet Nat’l Bank v.H & D Entertainment, Inc., 926 F. Supp. 226 (D. Mass. 1996), ‘The weight of legal precedent — and common sense — stands for the proposition that an accountant takes on fiduciary obligations only where he or she ‘recommend [s] transactions, structure [s] deals, and provide[s] investment advice ... such that he or she exercises some managerial control over the assets in question.’” Id. at 242, citing Martin v. Feilen, 965 F.2d 660, 669 (8th Cir. 1992). In the case at bar, there is nothing in the materials submitted on summary judgment to indicate that the defendant was making decisions for the plaintiff or exercising control over his property. The defendant was hired to prepare the plaintiff’s tax returns. Decisions have to be made, but any advice from the accountant has to be consistent the requirements of the tax code, regardless of whether the client may prefer a different result. Even if the parties discussed the purchase of property, as the plaintiff implied in his deposition, there is not a scintilla of evidence that any such disclosures were divulged by the defendant.
*29 3. What the complaint is then whittled down to is the count for negligent infliction of emotional distress. In order to recover damages under this count, the plaintiff would have to prove that (1) the defendant was negligent, (2) he suffered emotional distress, (3) the defendant’s conduct caused that distress, (4) there is “objective corroboration of the emotional distress alleged,” and (5) “a reasonable person would have suffered emotional distress under the circumstances of the case.” Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993). See also Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 700-702 (2005). In allowing the defendant’s motion for summary judgment, the trial judge concluded that “[ejven if the plaintiff were able to show the existence of a duty and the defendant’s breach of it, he would be unable to demonstrate compensable damages.” In reviewing that decision, we are mindful that on summary judgment the trial court does not “pass upon the credibility of witnesses or the weight of the evidence ... [or] make [its] own decision of facts.” Hub Assocs. v. Goode, 357 Mass. 449, 451 (1970). Nor should a court “grant a party’s motion... ‘merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.’” Attorney General v. Bailey, 386 Mass. 367, 370 (1982), quoting Hayden v. First Nat’l Bank, 595 F.2d 994, 997 (5th Cir. 1979). Also, “[o]rdinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact.” Goulart v. Canton Hous. Auth., 57 Mass. App. Ct. 440, 441 (2003). And with respect to the specific cause of action involved here, compare Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306, 320 (2003), where the Appeals Court stated that “[a] jury, composed, as it is, of persons from varying walks of life and reflecting a variety of experience is a particularly suitable institution for assessing the emotional damage incident” to gender-based discrimination by a golf club.
That said, we are equally mindful that on summary judgment, “a judge may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence.” Goulart, supra at 441. This concept is particularly relevant to a claim for negligent infliction of emotional stress concerning which the Supreme Judicial Court has sought “to strike a proper balance between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs.” Sullivan, supra at 134. In striking that balance, the Court stated: “[P]laintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial” (emphasis supplied). Id. at 137-138. See also Rodriguez, supra at 702. In Sullivan v. Boston Gas Co., the Court also noted that “the nature of the incident” that caused any alleged distress may “corroborate [] the genuineness” of the claim. Sullivan, supra at 140. We take the converse to be true also, i.e., that the nature of the conduct involved may serve to undermine the genuineness of any such claim.
Leaving aside the issue of whether the defendant’s conduct was a substantial cause of any alleged distress (see footnote 1 above, discussing the other alleged stress-inducing matters in the plaintiff’s life at the time), we conclude that based on the materials before the trial court on summary judgment, the defendant did show that proof was “unlikely to be forthcoming at trial,” that there is no “objective corroboration of the emotional distress alleged,” and that a reasonable person would not have suffered emotional distress under the circumstances of this case. We also conclude that the plaintiff did not then satisfy his obligation to demonstrate that a genuine issue of fact remained for trial.
While the plaintiff, to survive summary judgment, did not have to refer to expert medical testimony to substantiate his distress, he did have to do “more than allege ‘mere upset, dismay, humiliation, grief and anger.’” Sullivan, supra at 137, quoting Corso v. Merrill, 119 N.H. 647, 653 (1979). See also Gutierrez v. Massachusetts Bay *30 Transp. Auth., 437 Mass. 396, 412 (2002). In the case at bar, the plaintiff, who was admittedly upset with his wife, upset about the divorce proceedings and upset about the condition of his child, alleged that he could not sleep and lost his appetite. As to the former, according to his deposition, there were “times maybe an hour [he] would sleep.” However, he could not quantify how often this happened, other than saying a “lot of days.” Yet he never took medication or contacted a health care professional in an effort to deal with any sleep problem. The allegation of a loss of appetite is similarly vague. In “the first few months” after the disclosure, he “probably lost ten to 20 pounds,” with his weight dropping to 220 pounds. In his deposition, he stated that he “had no interest in eating” and that “his mind was preoccupied with what was going on around [him].” This testimony, however, was on the heels of his statement that “[t]o this day, I take vitamins and try to eat properly. To try and help me with stress, I would lift weights.” When asked if his weight loss was the result of the disclosure of his tax returns, he stated: “My eating habits and entirely, I don’t know. I know I’m not as big as I was before and my eating habits are different. I did not have as much of an interest in eating.” Finally, the plaintiff complained in his deposition that because of the defendant’s disclosure, he has lost trust in others. If such loss of trust may even be considered a form of emotional distress, it is completely vitiated by the undisputed evidence that the plaintiff had no problem trusting his attorney, a different accountant, and his son’s holistic healer.
The evidence of harm discussed above was not enough as a matter of law to “present a sufficient likelihood of genuineness to go to trial.” Sullivan, supra at 138. It is helpful to compare the situation here with that presented in Kelly v. Brigham, & Women’s Hosp., 51 Mass. App. Ct. 297 (2001), where the plaintiff alleged that she suffered from panic attacks, depression, nightmares, cramps, and shortness of breath as a result of the negligent autopsy of her husband. The sufficiency of that evidence to survive summary judgment was deemed “a close question.” Id. at 306. H the distress alleged in Kelly was a close call, the distress here, which is significantly less severe in nature, could not pass legal muster. In concluding that the evidence in Kelly was sufficient to survive summary judgment, the Appeals Court had to look beyond the distress alleged to the conduct of the defendant, noting that “[w]hen a close family member, traumatized by the death of a loved one, experiences serious mental anguish caused by damage to the deceased’s remains, ‘the special circumstances serve as a guarantee that the claim is not spurious.’” Id. at 307, quoting PROSSER & Keeton, TORTS §54, at 362 (5th ed. 1984). There are no such special circumstances here. Assuming the defendant disclosed the tax returns, that conduct would not serve as any such guarantee. Rather, it serves only to reduce the impact of what are already vague allegations of emotional distress to the extent that it could not be said a “reasonable person” would have suffered such distress as a result of the disclosure. Essentially, the plaintiff claims his distress was the result of the defendant’s disclosure to his ex-wife of tax returns which were not alleged to contain any untruthful, embarrassing or secret information and which his ex-wife would have ultimately seen during the course of the divorce proceedings. If the defendant had made such disclosures in violation of G.Lc. 62C, §74, the plaintiff would have been justified in being annoyed, upset, angry, disappointed, and/or dismayed. However, a “reasonable person” would not have suffered anything more, and more was necessary to make out a claim for negligent infliction of emotional distress. Accordingly, there was no error in the trial courts allowance of the defendants motion for summary judgment.
The judgment of the trial court is affirmed. Appeal dismissed.
So ordered.

 Because nothing turns on any distinction between the corporate defendant and the individual defendant, the defendants will be referred to in the singular.

 The plaintiff depicted any alleged distress as related to his concern for his son. In his deposition, he testified as follows: “Once again, I have a handicapped little boy who the record will show [his mother], no one from her end has ever made an effort to help him, myself. And the drug addiction issue, I would come home from work, we have a woman who is passed out all day. A little boy who cannot speak for himself, soaked in urine, feces, what have you. As if that wasn’t enough of a burden, a man who has taken an oath to keep confidential my tax returns, gives them out to a third party and they get'into the possession of my divorce attorney. Incredulous but the — I don’t know. I can’t speak for their motive but the issue of me trying to help a little boy and then have these individuals try to harm me, the emotional issue, I can’t even, to this day I just can’t put it into words.”

 The exceptions to this prohibition set forth in Section 74 are inapplicable here.